**UNITED STATES PLYWOOD CORP.**

v.

**HUDSON LUMBER CO. et al.**

**No. 130, Docket 22894.**

United States Court of Appeals
Second Circuit.

Argued Jan. 7, 1954.

Decided Feb. 10, 1954.

George H. Schwartz, New York City (Austrian & Lance, Carl J. Austrian, Schwartz, Nathanson & Cohen, Isadore H. Cohen, and Zelig R. Nathanson, New York City, on the brief), for defendants-appellants.

Sydney Krause, New York City (Krause, Hirsch, Levin & Heilpern, Raymond T. Heilpern, and Bernard Wexler, New York City, on the brief), for plaintiff-appellee.

Before CHASE, Chief Judge, CLARK, Circuit Judge, and GIBSON, District Judge.

CLARK, Circuit Judge.

In this action the plaintiff, United States Plywood Corporation, sought to recover the sum of $193,180.65 alleged to be due for cedar logs sold and delivered by it to the Hudson Lumber Company under a contract guaranteed by the Eagle Pencil Co. The answer of Hudson and Eagle contained an affirmative defense and a counterclaim for rescission of the contract based upon the ground of mistake. Plaintiff moved to strike the defense and counterclaim and for summary judgment upon the counterclaim; and this motion the district court granted in full in a reasoned opinion holding defendants not entitled to rescind, reported in D.C.S.D.N.Y., 113 F.Supp. 529. This appeal by the defendants is from the order and judgment thus entered. Some months after the judgment and appeal the judge amended his order by making a finding of no just reason for delay and expressly directing judgment, thus bringing it within the formal requirements for finality specified in amended Fed.Rules Civ.Proc. rule 54(b). Though the parties have not now raised the question, nevertheless we must still determine the appealability of the judgment, and are constrained to find here not "multiple claims," but merely a defense to a claim on contract not justifying appeal even under the amended form of the rule. Pabellon v. Grace Line, 2 Cir., 191 F.2d 169, certiorari denied Coston Supply Co. v. Pa-

bellon, 342 U.S. 893, 72 S.Ct. 201, 96 L. Ed. 669; Leonidakis v. International Telecoin Corp., 2 Cir., 208 F.2d 934; All American Airways, Inc., v. Elderd, 2 Cir., 209 F.2d 247.

For a succinct, but lucid, exposition of the now long-standing dispute between the parties we turn to Judge Dimock's opinion, 113 F.Supp. at pages 530, 531:

"The contract was dated December 9, 1947. It called for the sale and delivery by Plywood to Hudson of all the merchantable cedar logs to be derived by Plywood from a tract of about one billion feet of timber in the State of California, known as the LaTour Timber, and the payment therefor by Hudson of Plywood's cost of such logs, as defined in the contract, plus 10% of such cost. A time limit of 25 years was fixed by the contract.

"The LaTour Timber consisted of pine and fir besides the cedar. The contract recited that all of the timber was to be cut at the same time and the logs of all three kinds delivered at substantially the same point, the cedar for Hudson and the pine and fir for Plywood. It provided in substance that, of the cedar logs, only those which scaled 50% merchantable should be delivered.

"The definition of cost included 'logging costs' and provided 'logging costs * * * shall be computed on a common cost per M ft. for all species derived from the LaTour timber and this common cost will be the cost per M ft. of cedar logs delivered to Hudson hereunder.'

"A few months after the signing of the contract and before any logs had been delivered a controversy arose over the interpretation of this definition which is the basis of Hudson's plea for rescission on the ground of mistake. Plywood contended that the common cost should be divided in proportion to the gross footage delivered of each of

the three kinds of logs while Hudson and Eagle contended that the apportionment should be according to the net merchantable footage delivered of each. This makes a substantial difference because there is a larger unmerchantable content in the average cedar log than in the average pine or fir log. Thus if the logging cost were apportioned according to the merchantable footage in each log delivered to the common destination instead of the total footage in each log delivered there, the cedar would bear a much smaller part of it."

The controversy as to the proper method of computing the logging costs and hence the sale price of the cedar logs developed at least as early as the summer of 1948, although payments on account were made and deliveries were accepted as late as March, 1953, after the interposition of the counterclaim in this action. But meanwhile there was much interim activity as to the contract's meaning. The plaintiff's firm of certified public accountants (being induced by plaintiff to change their original conclusions, according to one of a series of factual allegations made by defendants) determined the cost covering each period from 1948 on according to the basis asserted by plaintiff; and plaintiff relies on their finding as final under the contract. Defendants in 1949 brought an action for a declaratory judgment in a federal court in California which was stayed pending arbitration under a mandatory arbitration provision of the contract, a decision affirmed on appeal. Hudson Lumber Co. v. U. S. Plywood Corp., 9 Cir., 181 F.2d 929. Hudson then sought arbitration which resulted in a 2-to-1 decision against it by the arbitration board, confirmed by the Superior Court of California, but still pending on appeal. Then plaintiff began this action for a balance due, as shown by the accountants' computation, in the Supreme Court of New York, which defendants removed to the court below and then filed the answer above stated. While defendants do contend that the contract as written favors their interpretation, yet their lengthy pleadings, which are both argumentative and evidential, justify Judge Dimock's conclusion that they were seeking the right to rescind, whatever may be the correct construction of this contract. Here is a case where the efficacy thought by many lawyers to reside in detailed pleading is found wanting; for the defendants by excess of pleading succeeded in concealing the point they now wish to stress.

For their claim is now that they desire reformation of the contract, a rewriting of it because of the alleged mistake to state the true intent according to which the parties may then act. They say that they were in any event entitled to this relief if their facts show it, no matter what their demand for judgment, citing F.R. 54(c); and plaintiff expressly concedes that the issue of reformation, never having been presented, is still open to be advanced by defendants. This, too, appears to be supported by Judge Dimock's careful restriction of his decision below to the claim of rescission. His holding was based on his conclusion that any right of Hudson to rescind was lost by delay and acts of affirmance of the contract for a long period after knowledge of all of the alleged grounds for rescission except those too trivial to be significant. But defendants urge that this does not touch—as indeed it does not seem to do—their (present) offer to do equity by carrying out the terms of the contract as finally and correctly ascertained. Under such a course, moreover, there is no necessity of any formal tender (here obviously impossible) of return of benefits received, either formerly in courts of equity or now in courts of New York. N. Y. Civil Practice Act §§ 112–d, 112–e, and 112–g; 5 Corbin on Contracts §§ 1103, 1116, 1120 (1951); and see also 2 id. § 344 (1950), 3 id. § 615 (1951).

There thus seems an air of unreality about what has happened, as though the

parties had been essaying preliminary trials of strength, only now to begin to approach the real combat. Since activity and deliveries under the contract have been going forward for six or seven years, since actual rescission in the sense of cutting off any action under the contract is practically impossible, it would seem that from an earlier date than this the parties would have contemplated the rather natural course of yet further continuing the contract in proper scope, whatever that may be. Practically, therefore, the decision below is far from final; and if the basis of the federal principle against "piecemeal appeals" is to have any significance, an appellate court should not be compelled to review the present inchoate state of adjudication below.

The legal precedents are in accord. The essence of defendants' case is a *defense* against plaintiff's claim of money due that by mistake the contract upon which the computation rests was wrongly stated. All that is needed is a statement of the defense; as a matter of fact a contract is never actually rewritten nowadays. See Broidy v. State Mut. Life Assur. Co. of Worcester, Mass., 2 Cir., 186 F.2d 490, 496. On the availability of the equitable defense to raise this issue the courts of New York and of the United States are in accord, the former (but not the latter) even going so far as to grant trial by jury. Crary v. Goodman, 12 N.Y. 266; Susquehanna S. S. Co. v. A. O. Andersen & Co., 239 N.Y. 285, 146 N.E. 381; Prudential Ins. Co. of America v. Strickland, 6 Cir., 187 F.2d 67; Bruckman v. Hollzer, 9 Cir., 152 F.2d 730; Clark, Code Pleading 103–106, 621–628 (2d Ed. 1947).

There is here therefore no such separate claim as would justify the partial judgment supporting an immediate appeal, permitted for truly multiple claims under the amendment to F.R. 54 (b). It may be suggested that, although not presently developed, the defendants may eventually feel the need of relief of a prospective or declaratory nature settling the operation of the contract throughout its remaining years of life. But if this proves to be the case, it will not change the situation fundamentally. The essential and only necessary decision is upon the defensive issue already presented; if any party for the sake of convenience, freedom from worry, or clarification of the point may seek and be properly accorded a more formal statement of the adjudication, that will not add to its scope or hence to its appealability. In the early and leading code case of Crary v. Goodman, supra, 12 N.Y. 266, the issue of mutual mistake in a deed of land between prior parties and affecting the future status of the title in the land records was held but an equitable defense. In other words, the addition of an unnecessary, but perhaps comforting, claim for formal relief does not change the character of the issue. See discussion in Clark, Code Pleading 625, 626 (2d Ed. 1947).

Appeal dismissed.