## UNITED STATES PLYWOOD CORPO-RATION, Plaintiff,

### v.

## HUDSON LUMBER COMPANY and Eagle Pencil Co., Defendants.

United States District Court,
S. D. New York.

Dec. 22, 1954.

■■■■■■■■■■■■■

———◆———

Krause, Hirsch, Levin & Heilpern, New York City, for plaintiff. Sydney Krause, Raymond T. Heilpern, Bernard Wexler, New York City, of counsel.

Austrian & Lance, New York City, for defendants. Schwartz, Nathanson & Cohen, by George H. Schwartz, Isadore H. Cohen, New York City, of counsel.

WEINFELD, District Judge.

The plaintiff moves for summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., or in the alternative striking various defenses and counterclaims of the defendants on the ground that they are insufficient as a matter of law, or in the alternative to all the foregoing for an order (1) requiring a more definite statement of the defendants' first and second counterclaims on the ground that these counterclaims, as now pleaded, are argumentative and verbose; and (2) striking out as immaterial and scandalous designated paragraphs of the answer.

The plaintiff also moves to vacate notices to take the depositions of certain witnesses and to strike the answers to plaintiff's request for admissions on the ground that the denials contained therein do not fairly meet the substance of the requested admissions and that the admissions are so qualified and ambiguous that it is impossible to determine what the defendants are admitting and what they are denying.

The action arises out of a long-term contract dated December 9, 1947, between the plaintiff, United States Plywood Corporation (Plywood) and the defendant Hudson Lumber Company (Hudson), performance of which by Hudson was guaranteed by the other defendant, Eagle Pencil Co. (Eagle). In substance, under the basic contract, Plywood agreed to sell and deliver, and Hudson agreed to purchase, over a period of twenty-five years, all merchantable incense cedar logs derived by Plywood from a timber tract located in Shasta, California, termed the La Tour timber. Hudson agreed to pay a price equal to the plaintiff's cost of the logs as defined in the contract plus 10% of such cost. The parties have been carrying on operations under this contract uninterruptedly since 1948, though there has been since the early days of these operations acute controversy between them as to the correct method of computing the cost, which has resulted in extensive litigation both in this Court and in the Courts of California.

The amended and supplemental complaint contains six causes of action, five against Hudson, and the sixth against Eagle. The first four causes of action against Hudson seek recovery of the purchase price, after credit for payments, of incense cedar logs delivered during the periods respectively (1) from July 1, 1948 to December 31, 1949, (2) from January 1, 1950 to December 31, 1951, (3) from January 1, 1952 to December 31, 1952, and (4) from January 1, 1953, to the service of the supplemental complaint. The fifth cause of action demands the stumpage price and carrying charges of cedar trees, the cutting of which is alleged to have been deferred at Hudson's request pursuant to a provision of the contract obligating Hudson to pay these items in such event. The remaining cause of action against Eagle is based upon its guaranty of Hudson's obligations under the terms of the major contract.

The La Tour tract, from which the incense cedar logs were to be cut for Hudson, consisted of other species of lumber, pine and fir, which Plywood logged along with the cedar. The dispute between Plywood and Hudson has been over the correct method of determining the cost of logging the cedar. The critical clause around which this controversy has been waged reads:

"3(a) (VI). With the exception of the stumpage charge payable pursuant to sub-division (i) hereof, log-

ging costs, as hereinabove defined, shall be computed on a common cost per M ft. and for all species derived from the La Tour timber and this common cost will be the cost per M ft. of cedar logs delivered to Hudson hereunder."

In effect, the dispute centers about whether the charges to defendant under the foregoing clause should be computed as plaintiff contends—on the common cost divided in proportion to the gross scale of, or total content of, all species of lumber logged, i. e., fir, pine and cedar —or as defendant contends—in proportion to the net scale or merchantable contents delivered of each species. The difference is substantial since incense cedar logs contain a much greater defective or unmerchantable content than pine or fir logs. If the costs were computed on a net basis of merchantable footage, the cedar would bear a much smaller, and, conversely, if based upon a gross scale computation it would bear a much higher, proportion of the total cost.

To resolve the dispute Hudson in March 1951 instituted arbitration proceedings in California, pursuant to Article 10 of the agreement. After protracted hearings the majority of the arbitrators on November 5, 1951, made the following award:

"We accordingly award as follows:

"1. That the theory and basis of cost accounting as followed in the audits and reports of Arthur Andersen & Co.[1] for the years 1948 and 1949 are pursuant to the proper construction of the contract of December 9, 1947.

"2. That Hudson is entitled to a credit for payment to Plywood under the contract for incense cedar logs delivered to October 31, 1950, which logs were not properly scaled as 'merchantable' under the con-

tract, said credit being the sum of Thirty-four Thousand, Seven Hundred and Fifty-seven Dollars and Seventy Cents ($34,757.70)."

Plywood's application to the Superior Court of California to confirm the award was granted and Hudson's motion to vacate denied. On January 17, 1953, judgment confirming the award was entered in the Superior Court and the judgment so entered has now become final through its affirmance by the District Court of Appeal of California, First Appellate Division, 124 Cal.App.2d 527, 269 P.2d 93, and successive denials by that Court and the Supreme Court of California of applications for rehearing and leave to appeal.

This end of the arbitration has, however, not set the dispute at rest. The parties are in hopeless disagreement as to the effect to be given to the judgment confirming the award. Plywood contends, in substance, that the judgment concludes the parties upon all the issues in this action, while Hudson treats it almost as a nullity. These respective contentions have been argued at great length both orally and in comprehensive briefs. Hudson's position is that since the judgment is not a money judgment it is not entitled to full faith and credit, and, further, since it was entered summarily on motion, it has no effect under the doctrine of collateral estoppel by judgment, an aspect of res judicata. The contentions are not borne out by authority and I must reject them.

The argument that only a money judgment is entitled to full faith and credit overlooks the distinction between the effect of a judgment as a determination of an issue and the right to bring suit on the judgment itself in another state. While the rule seems to be that suit in a sister state may be brought only upon a foreign judgment which establishes a definite, unconditional liability

---

1. Under the agreement Arthur Andersen & Co., a firm of independent certified public accountants, was designated to determine costs at the end of each year, the determination of said accounting firm to be conclusive and binding upon the parties.

**494**

for the payment of money,[2] the judgment is, nevertheless, entitled to full faith and credit as an adjudication of determined issues. The rule finds its most common illustration in cases determining marital status,[3] but has been applied in other situations as well.[4]

■■ The award of the arbitrators was made after extensive hearings, during the course of which much testimony was taken. Judgment was then entered on motion in accordance with the summary procedure governing arbitration awards adopted in California and many other states. Section 1292 of the California Code of Civil Procedure declares that a judgment confirming an arbitration award, entered pursuant to the provisions of the Code, as was the award with which we are dealing, has the "same force and effect, in all respects, as, and is subject to all the provisions of law relating to, a judgment in an action; * * *." The judgment is entitled to the same effect in this Court as it commands in California.[5] It is established that a judgment entered on an award is a judgment on the merits.[6]

■ Hudson argues further that the award is self-contradictory, in that the credit given to Hudson in the second paragraph upheld its position as to the proper method of cost accounting. In substance it urges that the two parts of the award (and the judgment) if taken separately are each in their separate parts decisions on the same issue in favor of the opposite parties to this litigation. Hence, it contends the issue presented in the California proceeding is set at large and this Court is free to determine the issue here. There is, however, nothing on the face of the award which compels the conclusion that the parts thereof are inconsistent with each other. The award itself is unambiguous. There is an explicit and unequivocal determination that the theory and basis of cost accounting in the audits of Arthur Andersen & Co. conformed with the proper construction of the contract. The Court may not go behind this plain language in quest of the reasons for the award. This very contention was urged by Hudson before the California District Court of Appeal and determined against it. That Court, in affirming the judgment confirming the award, held [124 Cal.App.2d 527, 269 P.2d 98]:

"On their faces the awards are definite, mutual and final. The arbitrators determined the method of cost accounting proper under the contract. If the arbitrators under the evidence before them did not properly apply that method to the credits due appellant [Hudson], such error did not make the awards any the less definite, mutual or final."

So long as the judgment is on its face unambiguous, it alone is controlling and must be given full effect as it stands.[7]

■ The parties then are concluded by the award which finds the method of

2. McQuillen v. Dillon, 2 Cir., 98 F.2d 726, certiorari denied 305 U.S. 655, 59 S.Ct. 251, 83 L.Ed. 424; Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65.

3. Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429; Williams v. State of North Carolina, 325 U.S. 226, 65 S. Ct. 1092, 89 L.Ed. 1577.

4. Matter of Roeben's Will, 171 Misc. 548, 13 N.Y.S.2d 53, affirmed 259 App.Div. 866, 20 N.Y.S.2d 401; Id., 285 N.Y. 807, 35 N.E.2d 195; Cf. Sturges, Commercial Arbitrations and Awards, 932 (1930).

5. Operative Plasterers' and Cement Finishers' International Ass'n of United States and Canada v. Case, 68 App.D.C. 43, 93 F.2d 56, Springs Cotton Mills v. Buster Boy Suit Co., 275 App.Div. 196, 88 N.Y.S.2d 295, affirmed 300 N.Y. 586, 89 N.E.2d 877.

6. Springs Cotton Mills v. Buster Boy Suit Co., Inc., 275 App.Div. 196, 88 N.Y.S.2d 295, affirmed 300 N.Y. 586, 89 N.E.2d 877; Fauntleroy v. Lum, 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039; Sturges, Commercial Arbitrations and Awards, 932 (1930).

7. Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278; Rothschild & Co., Inc., v. Marshall, 9 Cir., 44 F.2d 546; In re Norris Estate, 78 Cal.App.2d 152, 177 P. 2d 299.

cost accounting pursued by Arthur Andersen & Co. to accord with their contract. This ruling, however, does not necessarily entitle the plaintiff to summary judgment against either defendant on its causes of action, notwithstanding Plywood's proof that the sums demanded on its first four causes of action are the result of *computations* made by the method pronounced proper in the arbitration award in view of the counterclaim for reformation. If reformation is still available to Hudson, upon the facts here presented there clearly is a triable issue on the question. Although Plywood has heretofore conceded that defendants' original counterclaim for rescission did not bar them from advancing a counterclaim for reformation, nonetheless it now attacks the plea of reformation advanced in the amended answer to the amended and supplemental complaint upon two grounds.

 First, it argues that because the arbitrators took testimony of the actual intent of the parties in embodying in the contract the quoted clause prescribing the method of cost computation, their award concludes Hudson on the issue of reformation and bars the counterclaim for this relief. This thesis is untenable. The sole issue before the arbitrators was the correct interpretation of the cost provision as it stood. Any testimony regarding intention received by the arbitrators might illumine the meaning which the parties sought to give the language used in the contract. But, the issue in the proceeding always remained that of the construction of the contract, as written. An adjudication of that issue does not foreclose a claim for reformation.[8] Recently I had occasion to review the doctrine of res judicata by collateral estoppel and the conclusion which I have reached here follows established precedent.[9] If construction by a Court does not preclude a later suit

for reformation, certainly construction by an arbitrator should have no greater effect. Just as Hudson may not resort to extrinsic evidence of what took place before the arbitrators to impeach an award unambiguous on its face, Plywood may not do so to expand the award beyond its inherent scope.

Second, Plywood seeks to strike the counterclaim for reformation on the ground that defendants have been guilty of flagrant and material violations of the agreement by failing to pay even those amounts due according to defendants' own computation. The Court itself on the argument of the motion raised this issue and as a result the defendants forthwith paid to the plaintiff, without prejudice to the rights of any of the parties, all sums due to June 6, 1954, according to defendants' understanding and contention as to the meaning of the contract. Provision was also made for payment of future deliveries based on defendants' contention. And so the plaintiff's second objection to the assertion of the counterclaim for reformation is met.

 Obviously, if Hudson succeeds on its counterclaim for reformation, the reformation will extend to all operations under the contract as reformed, including those during the period covered by the arbitration award. It follows that, so long as the reformation issue is undetermined, the plaintiff may not have summary judgment on its claims. Accordingly, the motion for summary judgment on these claims is denied.

 Plywood's motion also challenges the rescission defense and counterclaim. The defendants pleaded a like defense and counterclaim to the original complaint and Plywood moved to strike it and for summary judgment. Judge Dimock in a comprehensive opinion granted the motion, substantially on the ground that Hudson's long-continued op-

---

8. Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 165 N.E. 456; Crane v. Hegeman-Harris Co. (1939) 1 All.Eng.Rep. 662, affd. 4 All. Eng.Rep. 68.

9. See Saper v. Long, D.C.S.D.N.Y., 121 F. Supp. 65.

erations under the contract after knowledge of all the alleged grounds upon which it sought to rescind barred its claim for rescission.[10] The order and judgment then entered were held by the Court of Appeals not final and hence not appealable.[11] Comparison of the present rescission defense and counterclaim with that before Judge Dimock shows that the two are, for all practical purposes, identical. In the interval there has been no change in the factual situation in Hudson's favor. The reasons for Judge Dimock's decision are stronger today than they were when he granted summary judgment on the rescission claim. Not alone does orderly procedure dictate that I follow Judge Dimock's ruling, but I am led to do so additionally because I am in complete agreement with the views expressed by him.

Plywood's motion to strike the rescission defense and counterclaim, being the third defense and second counterclaim of Hudson and Eagle, is granted.

■ Plywood also moves to strike for insufficiency in law the first defense of Hudson and Eagle. This defense pleads broadly the commission by Plywood of various breaches of contract in the course of its performance by the parties. It is unnecessary to set out even the gist of what is alleged, for it is clear that in no event can it constitute a defense to the claims for the purchase price of the logs admittedly delivered to, and accepted by, Hudson. The challenged defense does not say that the breaches were of the essence of the contract and so justify Hudson's refusal to go on with performance. More fatal to the sufficiency of this defense is the failure to allege the return or offer to return the delivered lumber. When the buyer does not rescind, but accepts and retains the goods, he is liable for the price, with a right of action against the seller for breach of warranty or other breach of the contract committed by the seller. The buyer's damages may be set off in diminution of his liability for the purchase price.[12] The breaches complained of are not pleaded by way of counterclaim or set off in mitigation of the award due for the purchase price. This defense is, therefore, stricken, but since conceivably it may be corrected, the defendants are given leave to amend.

■ The first and second defenses of Eagle, also attacked for insufficiency, may conveniently be treated together. Eagle unconditionally guaranteed full and complete performance by Hudson of the Plywood-Hudson contract. There is nothing in the instrument of guaranty which limits this broad undertaking of liability. While the Plywood-Hudson contract declares that its execution, operation and performance and all other matters pertaining to it shall be governed by the law of California, Eagle's guaranty has no like provision. Eagle's first defense to the cause of action against it asserts that it does not state a claim on which relief can be granted. The second defense pleads that the contract and guaranty are governed by California law, under which no suit is maintainable against Eagle until Hudson's liability has been finally adjudicated. I hold these defenses to be insufficient, for the cause of action against Eagle incorporates the appropriate allegations of the prior causes of action against Hudson, which, as matter of pleading, unquestionably show nonperformance by Hudson of its obligations under the basic contract. Eagle having unconditionally guaranteed performance is, therefore, bound to answer for Hudson's nonperformance. This is true under California law.[13] Even if the guaranty is governed by California law rather than by that of New York, where it

10. D.C., 113 F.Supp. 529.

11. 2 Cir., 210 F.2d 462.

12. New York Personal Property Law, McK.Consol.Laws, c. 41, § 150; Civil Code of California, § 1789.

13. London, Paris, & American Bank v. Smith, 101 Cal. 415, 35 P. 1027; Fiedler v. Allen, 117 Cal.App. 622, 4 P.2d 292.

was executed, it does not appear that in California Plywood must either obtain an adjudication or exhaust its remedies against Hudson before it is permitted to proceed against Eagle.

The defendants do not place much emphasis upon this point in their brief. Their position seems to be rather that Eagle was not a party to the arbitration and hence is not bound by the award. Plywood argues that though Eagle may not have been a formal party of record, its identity of interest with Hudson, with common officers and directors, and its participation in the arbitration directly and through its affiliate are enough to conclude it, as well as Hudson, by the award.[14] These conflicting contentions rest on matters of fact and raise triable issues as to which no definitive ruling is called for on the present motion. In any event, I have held that should Hudson succeed on its claim for reformation, it is not foreclosed by the award and obviously Eagle would be entitled to the same benefit should that result eventuate. Eagle's first and second defenses as pleaded are held insufficient and are stricken.

The fifth cause of action against Hudson is for the carrying and like charges incurred in complying with Hudson's request to postpone the cutting of trees. This is a subordinate matter. It was not the subject of arbitration. The defendants have created triable issues and summary judgment may, therefore, not be granted on this cause of action.

The answer is far from a model of clear or precise pleading and undoubtedly can be much improved by generous pruning. The pleader appears to have learned little from the admonition of Judge Clark on the prior appeal when he referred to defendants' "lengthy pleadings, which are both argumentative and evidential".[15] But its prolixity and wealth of detail do not appear to prejudice the plaintiff.[16] The particular paragraphs sought to be stricken, while afflicted with the characteristics of the rest of the answer, already commented on, are neither irrelevant nor scandalous. Insofar as the plaintiff's motion on the foregoing grounds is directed against the second counterclaim for rescission, it is academic, this counterclaim having been stricken for other reasons. The motion to require the defendants to file a more definite statement of the first counterclaim or to strike out any of its paragraphs is denied.

The testimony of the witnesses whose depositions the defendants wish to take in support of the reformation counterclaim is not shown to be so foreign to that issue as to forfeit the defendants' right to the testimony. Indeed on a prior application involving a notice similar to that now sought to be vacated plaintiff offered no objection thereto on the grounds presently advanced. The motion to vacate the notices to take the depositions is accordingly denied.

Examination of the answers to the request for admissions persuades me that the defendants have not complied with the requirements of Rule 36(a) of the Federal Rules of Civil Procedure. Many of them are clearly equivocal and ambiguous. To cite an example: The conclusory statement in answer to subdivisions of interrogatory #1 that "defendants cannot otherwise respond to said request since defendants' checks on plaintiff's deliveries are not made simul-

---

14. Carleton v. Lombard, Ayres & Co., 149 N.Y. 137, 43 N.E. 422; Thomson v. L. C. Roney & Co., 112 Cal.App.2d 420, 246 P.2d 1017; Kelly v. Ning Yung Beneficial Association, 2 Cal.App. 460, 84 P. 321; Massachusetts Bonding & Ins. Co. v. Robert E. Denike, Inc., 3 Cir., 92 F.2d 657; Columbia Ins. Co. of New Jersey v. Mart Waterman Co., 2 Cir., 11 F.2d 216, certiorari denied 271 U.S. 672, 46 S.Ct. 486, 70 L.Ed. 1144.

15. United States Plywood Corporation v. Hudson Lumber Company, 2 Cir., 210 F. 2d 462, 464.

16. Sinaiko Bros. Coal & Oil Co. v. Ethyl Gasoline Corp., D.C., 2 F.R.D. 305; 2 Moore's Federal Practice ¶ 12.21, page 2318.

**498**

taneously with the deliveries" appears to be negatived by its own prior statement and actions. To cite another example at random: The answer to 1(r), instead of meeting the interrogatory, is argumentative. The defendants are directed to file and serve amended and adequate answers which, in accordance with the Rule, shall fairly meet the substance of the requested admission.

Settle order on notice.