UNITED STATES PLYWOOD CORPO-
RATION, Plaintiff,

v.

HUDSON LUMBER COMPANY and
Eagle Pencil Co., Defendants.

United States District Court
S. D. New York.

April 13, 1955

Krause, Hirsch, Levin & Heilpern, New York City, Sydney Krause, Raymond T. Heilpern, Bernard Wexler, New York City, of counsel, for plaintiff.

Austrian & Lance, New York City, Schwartz, Nathanson & Cohen, By George H. Schwartz and Isadore H. Cohen, New York City, of counsel, for defendants.

IRVING R. KAUFMAN, District Judge.

The instant motion to dismiss defendants' "Partial Defense and Set-off by way of Recoupment" or in the alternative to direct the defendants to furnish a more definite statement of the nature of their claim as set forth in the aforementioned defense is but one in a series of motions addressed to the pleadings which have been heard and decided by other judges of this court.[1] "There thus seems an air of unreality about what has happened, as though the parties had been essaying preliminary trials of strength * * *." United States Plywood Corporation v. Hudson Lumber Co., 2 Cir., 1954, 210 F.2d 462, 464.

The amended and supplemental complaint alleges in substance the making of a long-term contract, dated December 9, 1947, between the plaintiff, United States Plywood Corporation (hereafter "Plywood") and the defendant, Hudson Lumber Company (hereafter "Hudson"), performance of which by Hudson was guaranteed by the other defendant, Eagle Pencil Company (hereafter "Eagle"). The aforesaid complaint further alleges that Plywood agreed to sell and deliver, and Hudson agreed to purchase, over a period of twenty-five years, all merchantable incense cedar logs derived by plaintiff from a timber tract located in Shasta, California, termed "La Tour timber". Hudson agreed to pay a price equal to the plaintiff's cost of the logs, as defined in the contract, plus 10% of such costs.

There has been much dissension between the parties since the inception of the operations concerning the correct method of computing the cost and this has resulted in an arbitration and award in California which has been confirmed by the courts of California.

In all, the amended and supplemental complaint contains six causes of action, five against Hudson and the sixth against Eagle. Judge Weinfeld succinctly summarized the causes of action as follows: "The first four causes of action against Hudson seek recovery of the purchase price, after credit for payments, of incense cedar logs delivered during the periods respectively (1) from July 1, 1948 to December 31, 1949, (2) from January 1, 1950 to December 31, 1951, (3) from January 1, 1952 to December 31, 1952, and (4) from January 1, 1953, to the service of the supplemental complaint. The fifth cause of action demands the stumpage price and carrying charges of cedar trees, the cutting of which is alleged to have been deferred at Hudson's request pursuant to a provision of the contract obligating Hudson

1. 113 F.Supp. 529 (Decision by Judge Dimock, June 30, 1953); appeal dismissed 2 Cir., 210 F.2d 462; also Opinion by

Judge Weinfeld, D.C., 127 F.Supp. 489 (December 1954).

to pay these items in such event. The remaining cause of action against Eagle is based upon its guaranty of Hudson's obligations under the terms of the major contract." 127 F.Supp. 489, 492.

The answer, in addition to denying the allegations of the plaintiff's amended and supplemental complaint, sets up a partial defense and set-off by way of recoupment and a separate and complete affirmative defense and counterclaim for reformation of the contract on which the complaint is founded. The counterclaim for reformation, which has been sustained by Judge Weinfeld, alleges that the contract upon which the action is based is not one for an ordinary purchase and sale of cedar logs but instead was a joint venture. It is to be noted that in defendants' original answer the breaches now alleged by way of recoupment were pleaded in substantially the same form but as a complete defense. Judge Weinfeld, on the motion to dismiss this defense, held: "The buyer's damages may be set off in diminution of his liability for the purchase price. The breaches complained of are not pleaded by way of counterclaim or set off in mitigation of the award due for the purchase price. This defense is, therefore, stricken, but since conceivably it may be corrected, the defendants are given leave to amend." 127 F.Supp. 489, 496.

■ The crux of plaintiff's argument is that the defense[2] attacked herein is legally insufficient, inasmuch as the defendants do not allege that any notice was given to plaintiff of any of the alleged breaches of contract. Hence, plaintiff asserts that it should be dismissed pursuant to Fed.Rules Civ.Proc. Rule 12(b), 28 U.S.C.A. The defendants urge that the motion should not have been made under Rule 12(b) but under Rule 12(f), since the pleading to which it is addressed does not allege "a claim, counterclaim, cross-claim, or third-party claim." The plaintiff answers that the particular subdivision of the Rule under which it is asking that the partial defense be stricken is not important, and if it does become important, it asks this Court to treat this branch of its motion as if it had been made pursuant to Rule 12(f). The motion will be so treated.

2. The defense under attack reads as follows:

"As and for a partial defense and set-off, by way of recoupment, defendants Hudson Lumber Company and Eagle Pencil Company (sued herein as "Eagle Pencil Co.") allege:

"30. That during the entire period said contract, Exhibit A annexed to the Amended and Supplemental Complaint, has been in existence, plaintiff has committed further continual and substantial breaches of said contract in various respects, including the following:

"(a) By delivering incense cedar logs which did not scale at least 50% merchantable, as required by the contract, in violation of the terms thereof;

"(b) By measuring or scaling, in a manner in violation of the contract, so as to fail to eliminate unmerchantable cedar as defined by the contract;

"(c) By failing and refusing to make scaling computations on proper scaling lengths, as required by the contract;

"(d) By causing defendant Hudson to expend substantial sums of money to destroy or dispose of unmerchantable cedar delivered in violation of the terms of the said contract;

"(e) By charging the defendant Hudson for the chunk scale on logs left in the woods by plaintiff's contractor;

"(f) By negligently handling logs in the forest so that broken or sprung logs were delivered, causing difficulty and damage in the handling of such logs in the mill;

and plaintiff threatens to continue to commit said substantial breaches throughout the term of said contract, Exhibit A annexed to the complaint, all to the damage and prejudice of defendants already incurred and to the continuing damage and prejudice of defendants which will hereafter occur.

"31. That by reason of the foregoing, the defendants have been substantially damaged in an amount which cannot be ascertained until, on a trial of this action, the amount of such damages be fixed and awarded to defendants in diminution, setoff and recoupment of such sums, if any, as may be granted plaintiff."

Plaintiff's argument in the main on its motion, attacking the sufficiency of the partial defense, is rooted in the contention that the Uniform Sales Act applies to the transactions herein, and that pursuant to it notice of the alleged breaches is an essential element of a valid claim of the type that defendants here seek to assert.[3] The defendants answer that the Uniform Sales Act does not apply because this is a case of joint venture. Furthermore, the defendants argue, that even if this is not a case of joint venture, that the defendants' defense deals with an erroneous application of the complex price formula in the contract. It is apparent, therefore, that there are complex and contested facts and issues presented. If the dealings between the plaintiff and the defendants were one of joint venture then the partial defense would appear to be adequate; if it is what the plaintiff asserts it is, then some doubt is cast upon the adequacy of the defense without the allegation of notice. 3 Williston on Sales (Rev. Ed.) pp. 38–39; 41–42; 46, n. 11. The answer to this is so bound up with the particular facts and circumstances that it is better to let them first be developed at the trial. See Foundry Services, Inc. v. Beneflux Corporation, 2 Cir., 1953, 206 F.2d 214, 216.

 It has been stated time and again that pleadings in the federal court serve the purpose of mere notice-giving. Formalism in pleading has been eliminated as to the details of claims and defenses, Dioguardi v. Durning, 2 Cir., 1944, 139 F.2d 774, 775, and such details have been properly left to be elicited by discovery and deposition procedures as well as by admission and pre-trial procedures. On a motion directed to the face of a pleading the Court must construe the allegations in a manner most favorable to the pleader and if the language is at all ambiguous, it also should be construed most generously in favor of the pleader. Virgin Islands Corporation v. W. A. Taylor & Co., 2 Cir., 1953, 202 F.2d 61, 65. The rule is also stated this way: "Any doubt should be resolved in favor of the pleading, especially when it would be more satisfactory to determine the sufficiency of the defense after more facts are known. The court to which a motion to strike under Rule 12 (f) is addressed has a wide measure of discretion. * * * Refusal of the motion will not prejudice the plaintiff and may be of assistance in a final determination of the complex issues involved. * * *" Doble v. Standard Brands, Inc., D.C.D.Mass.1951, 11 F.R.D. 200, 202. See also Brown & Williamson Tobacco Corp. v. United States, 6 Cir., 1953, 201 F.2d 819, 822; Hill, Brown Corp. v. Bosler, D.C.D.R.I.1953, 14 F.R.D. 170, 172; see also Wilkinson v. Feild, D.C. W.D.Ark.1952, 108 F.Supp. 541, 545; Maschmeijer v. Ingram, D.C.S.D.N.Y. 1951, 97 F.Supp. 639, 641.

One of the most important advances of the Federal Rules of Civil Procedure was to abolish technicalities in pleading. This was stated with lucidity by Judge Holtzoff in his treatise "A Judge Looks at the Rules After Fifteen Years of Use", 15 F.R.D. 155. "Some of the opponents of the adoption of the Rules originally raised the objection that under the new procedure, which was then in process of study, any high school student can draw a pleading that would pass muster. This suggestion was made not facetiously, but seriously, without the realization of the fact that it constituted a splendid compliment to the new Rules." Page 159.[4]

---

3. Judge Weinfeld did not hold that the failure to serve notice or allege notice giving, now insisted on by plaintiff as a bar to the disposition of the suit, would be fatal. It is to be noted that the plaintiff argued before Judge Weinfeld that the failure to given notice was fatal. See page 53 of brief submitted to Judge Weinfeld on its motion for summary judgment.

4. Judge Holtzoff also points out that while motions for a more definite statement have been retained, F.R.C.P. 12(e), they are limited to cases in which a pleading is so vague or ambiguous that a responsive pleading cannot be reasonably framed. He states further, page 160: "As a consequence, such motions are sparingly and infrequently granted."

Judge Holtzoff pinpoints the answer to the problem presented on this motion in the following language: "The abolition of technical requirements in pleadings is one of the outstanding advances of the new Rules. No longer can the litigant exclaim: 'Is not this a lamentable thing that of the skin of an innocent lamb should be made a parchment? That parchment, being scribbled o'er, should undo a man?' Demurrers have been abolished. While, of course, a claim may be dismissed for insufficiency, this may be done only if it appears that on no theory, and on no state of facts that may be proved in support of the allegations, is it possible for the pleader to prevail. Technical deficiencies in pleadings are no longer grounds for dismissal. The courts have welcomed this principle and have applied and enforced it in their day-to-day contact with litigation." Page 160.

■ I conclude, therefore, that it is impossible upon the pleadings alone to hold that the transactions herein were either pursuant to a joint venture or a purchase and sale agreement. The issue cannot be determined without the aid of additional facts, not presented on this application. Since defendants' legally sufficient counterclaim for reformation is based upon a joint venture theory, evidence as to the existence of a joint venture will be fully elicited at trial, at which time the joint venture v. purchase and sale contentions as to the defense by way of recoupment can be adequately resolved. Surely, the plaintiff cannot assert that it does not have notice of the defense which is being interposed in behalf of the defendants. It has had sufficient notice to enable it to prepare the extensive interrogatories which were presented to this Court on the argument of this motion.

■ Plaintiff further seeks to require the defendants to state specifically instead of in general terms the amount of damages which they claim to have suffered by reason of the breaches of contract alleged in their partial defense. Since it appears that the plaintiff is not entitled to serve a responsive pleading to the partial defense, this application under Rule 12(e) seems to be inappropriate. A responsive pleading is not permitted to a partial defense. Rule 7(a) provides: That "there shall be a complaint and an answer; and * * * a reply to a counterclaim *denominated as such;* an answer to a cross-claim, if the answer contains a cross-claim; * * * No other pleading shall be allowed, except that the court may order a reply to an answer * * *". It is clear from the pleading, particularly in the light of Judge Weinfeld's opinion, in which he says, in substance, that the defense may be pleaded in diminution of the defendants' liability or in mitigation of the award due for the purchase price, that the defense is not a counterclaim but a recoupment, as stated by the defendants. See National Cash Register Co. v. Joseph, 1949, 299 N.Y. 200, 203, 86 N.E.2d 561, 12 A.L.R.2d 812; United States v. New York Trust Co., D.C.S.D.N.Y.1946, 75 F.Supp. 583, 587; Michigan Yacht Power Co. v. Busch, 6 Cir., 1906, 143 F. 929, 936. There is a marked distinction between recoupment and a counterclaim which the plaintiff has apparently failed to note. Recoupment does not seek an affirmative judgment.[5] It is defensive.

Prof. Moore in discussing Rule 12(e) places the contentions in focus this way: "The motion will lie only where the moving party is required or permitted to file a responsive pleading. A defendant may always make such a motion as to the complaint, if he honestly cannot answer it without clarification; but a plaintiff may not so move as to the answer, unless the answer contains a counterclaim denominated as such, or the court has or-

---

5. Defendants' amended answer contained certain language in the prayer for relief which seemed to indicate that affirmative judgment was sought. However, this language has been eliminated by plaintiff's stipulation.

dered a reply." 2 Moore's Fed.Practice, 2303.

While it is true that the defendants do not state any specific amount of damage in Paragraph 31, it is clear from their pleading that they are in no position at this time to ascertain it. Adequate tools are at hand for the plaintiff to ascertain the amount of the alleged damages sought by defendants' set-off and by way of recoupment, in advance of trial. Plaintiff is not required to make a responsive pleading to this allegation and, therefore, cannot be prejudiced by this type of pleading. Though not desirable, the pleading is sufficient.

Plaintiff's last application seeks the deletion in Paragraph 30 of the "Partial Defense and Set-Off by Way of Recoupment" of the words "and plaintiff threatens to continue to commit said substantial breaches throughout the term of said contract, Exhibit A annexed to the complaint, all to the damage and prejudice of defendants already incurred and to the continuing damage and prejudice of defendants which will hereafter occur." Plaintiff's motion to strike this allegation as "immaterial" or "impertinent" [6] must be sustained. The mere threat to continue breaching the contract in the future is not relevant to the ascertainment of damages incurred in the past. If further breaches in fact occur, then the defendants may move to supplement such breaches at that time or at the trial.

This case is a perfect example of the marshalling of technical forces to drag out the pleading stage of litigation and to delay the litigants' day in court. It seems to this Court that there has been an unnecessary expenditure of energy in the pleading stage of litigation instead of preserving it for the discovery and trial stages. This is contrary to the intention, purpose and meaning of the Rules. The motion is denied, except that the allegation that "plaintiff threatens to continue to commit said substantial breaches throughout the term of said contract * * * to the continuing damage and prejudice of defendants which will hereafter occur" is stricken.

Settle order.

---

6. This was erroneously labelled in the motion papers as a motion to make more definite and certain under subdivision (e) of Rule 12. As this was obviously a typographical error (Plaintiff's Brief, p. 14), the motion will be treated as if brought pursuant to subdivision (f).