## UNITED STATES PLYWOOD CORP.
### v.
### HUDSON LUMBER CO.

United States District Court
S. D. New York.
Oct. 28, 1955.

See also 17 F.R.D. 258.

Krause, Hirsch, Levin & Heilpern, New York City, Sidney Krause and Raymond T. Heilpern, New York City, of counsel, for plaintiff.

Austrian & Lance, New York City, Schwartz, Nathanson & Cohen, by George H. Schwartz and Isadore H. Cohen, New York City, of counsel, for defendants.

WEINFELD, District Judge.

The present motion, made on the eve of trial, is the defendants' third attempt to assert a counterclaim for rescission based upon alleged fraud and conspiracy on the part of the plaintiff's representa-

6. N.Y.C.P.A. § 1451.

tives. On two prior occasions counterclaims for rescission upon substantially the same allegations were stricken (113 F.Supp. 529 (per Dimock, J.), appeal dismissed, 2 Cir., 210 F.2d 462; 127 F. Supp. 489 (per Weinfeld, J.)). The action, which seeks to recover payment for deliveries of lumber made to the defendants pursuant to a written contract, has been pending for three years. The contract, particularly the provisions for computing the cost of lumber, has been the subject of extended litigation in this and the California courts.

I am of course mindful of the mandate of Rule 13(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A., pursuant to which the motion is made, that leave shall be granted for the amendment of pleadings when justice requires. However, after a careful review of the voluminous affidavits, exhibits and briefs (more than 300 pages), I am of the view that to grant this motion in the present posture of the case would not advance the interests of justice but would serve to unnecessarily delay the trial, already too long delayed, and to complicate further an involved and complex litigation.

The nub of the original charge was that plaintiff's representatives conspired to cause the accountants, named in the contract as impartial accountants, to interpret the cost provision of the contract on a gross scale rather than net scale basis, and to certify reports accordingly. The only additional allegations (subdivisions 4 and 5 of paragraph 61) in the proposed amended defense and counterclaim are that plaintiff's representatives conspired with the accountants to induce the giving of false testimony before the arbitrators in the California proceeding as a result of which the arbitrators made an award which upheld the plaintiff's position.[1]

To justify this eleventh hour motion, particularly in the light of the striking of their previous counterclaims, the defendants assert that as a result of recently conducted depositions and exhibits there brought to light, they have discovered evidence which gives support to their charges. It is unnecessary to determine whether the defendants' charges of fraud and conspiracy find support, as they contend in the alleged contradictions in testimony and exhibits. Neither would any useful purpose be served in detailing the substance of the constantly reiterated charges and the denials by those against whom they are levelled. Even if all the inferences of perjury and fraud, which are hurled about so freely, are warranted (and this certainly is doubtful), all the defendants claim is additional evidence to support their original charge. Stripped to its essentials, the defendants in effect are advancing another overt act in furtherance of the claimed conspiracy. Thus their counsel states "the arbitration award was obtained as a result of this false testimony and was a step in this conspiracy to defraud."[2] But the defendants have claimed knowledge of the conspiracy long before the so-called recent discovery. Their actions from the time they first acquired knowledge of the facts present an insuperable obstacle to the granting of the requested relief.

Out of the welter of conflicting and voluminous affidavits the following facts on the issue of knowledge clearly emerge. As early as June 7, 1949 Neall, the defendant Hudson's general manager, contended he had been advised by the accountant in charge that the accountant's firm had been "instructed" to prepare an audit on a gross scale basis. He so testified before the arbitrators in June, 1951. Later in the spring of 1952 Neall claimed

---

1. Cf. paragraphs 44 of original answer and 39 of second answer with paragraph 60 of proposed amended answer.

2. Parenthetically it is noted (apart from other obstacles): (a) it is questionable the award of the arbitrators, upheld by the California courts, is subject to attack here on the ground of perjury, see Jacobowitz v. Herson, 268 N.Y. 130, 197 N. E. 169; and (b) the sole issue before the arbitrators was the construction of the contract as written. See D.C., 127 F.Supp. 489, 495.

advice from Holmes, a former employee of the plaintiff, that its representatives and the accountants "got together and devised a method of cost accounting to sustain plaintiff's version of the contract." On the basis of this and other information the claim for rescission was interposed in the original answer in February, 1953 and again in the second answer. Notwithstanding, the defendants continued thereafter to accept deliveries and to exercise certain other rights under the contract.

When in June, 1953 Judge Dimock struck the original counterclaim for rescission, his holding, as noted by the Court of Appeals, was to the effect "that any right of Hudson to rescind was lost by delay and acts of affirmance of the contract for a long period after knowledge of all the alleged grounds for rescission except those too trivial to be significant."[3] The dismissal of the second counterclaim was upon similar grounds. With continued acceptance by defendants of the benefits of the contract thereafter and up to July, 1954, there is even less basis now than before for the plea of rescission.

 The effect of the defendants' retention of the fruits of the contract over so extended a period is in no wise mitigated by their present contention that the prior counterclaims were advanced when they only had "suspicions" and "may have suspected the existence of such fraud." They deemed their knowledge based upon said "suspicions" of sufficient substance to assert and support their claim for rescission based as it was upon charges of a most serious nature against an attorney and certified public accountants. Under the circumstances the duty to rescind existed as of the time they had such knowledge and was not diminished because they did not then have every scrap of evidence to establish their claim upon a trial.

"It is not requisite that the defrauded party shall be acquainted with all the evidence constituting the fraud before the duty to act by way of rescission arises. * * * When he has evidence sufficient to reasonably actuate him to rescind the contract and on which he has once acted no subsequent discovery of cumulative evidence can operate to excuse waiver of the fraud if one has in the meantime occurred or to revive a once lost right of rescission. The election to waive the fraud once deliberately made is irrevocable. Vacillation or speculation cannot be tolerated."[4]

I regard it as of significance that no affidavit by Neall, the general manager, or Holmes,[5] was submitted to give the details of their information and knowledge and upon which the defendants asserted their counterclaim. The sole affidavit in support of the motion was that of counsel, which accentuates the absence of the others. Obviously the attorney has no personal knowledge of the incidents relied upon to establish the charge.

As to the additional ground for rescission based upon the so-called "imaginary log" this, even if true, is a de minimis situation—again, "too trivial to be significant." Furthermore, the relevant facts here too appear to have been known to the defendants over an extended period of time during which they continued to accept the lumber.

In the exercise of discretion the motion is denied. The other branches of the motion are likewise denied, as was indicated upon the argument of the motion.

Settle order on notice.

---

3. 210 F.2d 462, 464.

4. Richardson v. Lowe, 8 Cir., 149 F. 625, 631; Cf. Simon v. Goodyear Metallic Rubber Shoe Co., 6 Cir., 105 F. 573, 581; Bach v. Tuch, 126 N.Y. 53, 26 N.E. 1019.

5. To date Holmes has not been examined by the defendants, although they have had ample opportunity to do so.