**CHUGACH ELECTRIC ASS'N, Inc. v. CITY OF ANCHORAGE.**

**No. A–7932.**

District Court, Alaska.
Third Division, Anchorage.

Aug. 11, 1952.

On Rehearing Aug. 26, 1952.

Hellenthal, Hellenthal & Cottis, Anchorage, Alaska, for plaintiff.

Ralph E. Moody, Anchorage, Alaska, L. A. Nikoloric, Portland, Or., for defendant.

FOLTA, District Judge.

The plaintiff, a cooperative organized to obtain the benefits of the Rural Electrification Act of 1936, 7 U.S.C.A. § 901, et seq., is engaged in the generation, distribution and sale of electricity in the suburbs of the City of Anchorage. By this proceeding plaintiff challenges the City's right to extend its transmission and distribution lines beyond its corporate limits, as well as those of the Eastchester Public Utility District, into territory which plaintiff serves or is prepared to serve under loans financed by the Rural Electrification Administration.

After the denial of a preliminary injunction, a hearing was had on the merits upon the plaintiff's second claim.

The fourth sub-division of 16–1–35, A.C. L.A. 1949, so far as pertinent to this controversy, provides:

"That any municipality which owns and/or operates plants for the use, sale or distribution of light, power, heat, water or telephone service to the residents of the city may also sell and distribute such light, power, heat, water and telephone service to the residents of contiguous and adjacent districts outside the limits of the city".

Plaintiff contends that the territory involved is not contiguous and adjacent. The Court ruled, however, during the course of the hearing that the conjunctive "and" must be read as "or" and that the precise question upon which the controversy turns, in view of the evidence and stipulations, is as to the meaning of the term "adjacent" as used in the Act.

The Eastchester Public Utility District, with thousands of inhabitants, lies between the corporate limits of Anchorage and the area sought to be served. At its closest point to the corporate limits, this area is approximately one and one-half miles distant. The City has not extended its distribution system into the Eastchester Pub-

lic Utility District, although this district is but the natural growth of Anchorage which has extended beyond its corporate limits on all sides but that bordering on Cook Inlet.

■ I am of the opinion that under the statute quoted a municipality is authorized to extend its distribution system into any non-contiguous area within a reasonable distance of its corporate limits, provided that the intervening territory is unsettled. and uninhabited or virtually so, but that it was never intended by the use of the term "adjacent" to permit a municipality to leap-frog a settled area, particularly where, as here, such area is, from all appearances, a part of the metropolitan area, and extend its distribution system into the territory beyond. Cf. United States v. Chaplin, C.C., 31 F. 890. Had the City extended its distribution system into the Eastchester Public Utility District, the areas here involved would now clearly be adjacent. State v. Kansas City, 360 Mo. 374, 228 S.W.2d 762, 773. The case of Booth v. City of Minneapolis, 163 Minn. 223, 203 N.W. 625, cited by the defendant, is readily distinguishable upon the facts. Obviously, no valid reason could be advanced for limiting a municipality in establishing parks, to areas immediately adjacent to its corporate limits.

I conclude, therefore, that the acts of the City in the instant case do not constitute a valid exercise of the right granted by Section 16–1–35. Bayliss v. Mayor and Council of Borough of North Arlington, 80 N.J.L. 124, 76 A. 1024. This conclusion, however, is limited solely to the extension of the facility involved.

### On Rehearing.

Upon the trial of the second claim set forth in the complaint, the Court found (Opinion of August 11) that since the defendant had not extended its transmission and distribution systems into Eastchester and supplied consumers there, it could not now extend its systems into an area beyond Eastchester known as Anchor Park, because that area was not "adjacent" to the City within the meaning of that term as used in the statute. Thereafter a rehearing was granted the defendant to permit it to prove that it had in fact extended its

system and has ever since been supplying consumers in Eastchester, and was, therefore, authorized to serve Anchor Park. Upon the rehearing it was shown that the City was, on June 30th, supplying electricity and telephone service to 734 and 760 consumers and subscribers respectively in Eastchester out of a total of approximately 2000, pursuant to a policy inaugurated in 1947 of extending its water, electrical and telephone systems into suburban areas wherever there is a reasonable prospect of a profit.

■ On behalf of the plaintiff, evidence was introduced, showing or tending to show that the policy lacked consistency; that the extension of its facilities never kept abreast of the demand because too much emphasis was placed upon immediate profit, in consequence of which the City serves only about 35% of the residents of Eastchester, which lies between the corporate limits of Anchorage and Anchor Park. The exhibits depicting, by means of dots, the location of the consumers throughout the Eastchester area, do show anything but a uniform distribution of consumers, but this is natural in view of the fact that power and light were supplied by other distributors before the City extended its lines into Eastchester, but, in any event, this condition alone does not bar the City from going beyond. The test is whether the City has, pursuant to its declared policy, proceeded in good faith, in a methodical and businesslike manner, to extend its facilities beyond the corporate limits for the purpose of serving such areas. Applying this test, I find:

(1) That pursuant to a policy initiated in 1947, the City has in good faith been extending its electrical system into contiguous and adjacent areas;

(2) That such extension has been commensurate with the capacity of the defendant's plants, its financial ability, the availability of materials and the prospect of profitable returns;

(3) That it serves approximately 35% of the consumers in Eastchester;

(4) That Eastchester Creek Valley, the area lying between Eastchester and Anchor

Park, is practically uninhabited as shown by plaintiff's exhibit No. 8 because settlers prefer the upland on both sides of the valley.

From the foregoing, I conclude that Anchor Park is adjacent, in the sense in which that term is used in Sec. 16–1–35, A.C.L.A. 1949, to the City of Anchorage, and that the City is therefore authorized to extend its transmission and distribution systems into that area.