CHUGACH ELECTRIC ASS'N, Inc.

v.

CITY OF ANCHORAGE.

No. 13721.

United States Court of Appeals, Ninth Circuit.

June 8, 1954.

———◆——

Hellenthal, Hellenthal & Cottis, Anchorage, Alaska, John H. Dimond, Juneau, Alaska, for appellant.

Ralph E. Moody, Kay, Robison & Moody, Anchorage, Alaska, for appellee.

Before BONE, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

The appellant, here called Chugach, is a nonprofit incorporated cooperative association which, with the aid of loans from the Rural Electrification Administration, has acquired and operates an electricial distribution system through which it supplies electricity in certain areas near, but outside the limits of the City of Anchorage. It brought the action below seeking to enjoin the city, which owns and operates a municipal electrical generation and distribution system from extending the lines of that system into certain described areas outside the city in which Chugach has distribution lines and where it is serving consumers of electricity.

■ Plaintiff's claim was that extending this electric service to these customers outside the city was beyond the powers of the city, and that it involved an unlawful expenditure of public funds. It was shown that Chugach was a taxpayer within the city. It purchased its power from the city's generating plant. The completion of the city's projected lines into the outside area described would result in the city and Chugach being in competition with each other there. This Chugach alleged, would be ruinous to it, and cause it irreparable injury.[1]

The case primarily turns upon the meaning of that portion of the Alaska statute, § 16–1–35, Alaska Compiled Laws 1949, which provides that the city "may also sell and distribute such light, power * * * service to the residents of contiguous and adjacent districts outside the limits of the city".[2] The find-

[1] In this court the appellant's standing to raise the question of the city's powers was not challenged. The test should be the same as that applied in the state courts, where taxpayers or persons otherwise adversely affected by improper official action, have been permitted to sue. See Davis on Administrative Law, (1951) pp. 712, 714.

[2] 16–1–35, Alaska Compiled Laws Annotated, 1949. "Powers of Council. The council shall have and exercise the following powers: * * * Fourth: (Public utilities.) To purchase, construct, or otherwise acquire, establish, and operate public wharves, public cold storage plants, telephone systems and plants for the use, sale and distribution of light, water, power, heat and telephone service to the residents of the city and the public. Provided, that any municipality which owns and/or operates plants for the use, sale or distribution of light, power, heat, water or telephone service to the residents of the city may also sell and distribute such light, power, heat, water and telephone service to the residents of contiguous and adjacent

ings disclose that at the time the suit was commenced some 250 new homes were being constructed in what was known as the Anchor Park area, located approximately one and one-half miles from the city limits. This area is the one to which the city was extending its lines. And its residents, appellant claims, are not within a "contiguous and adjacent district" within the meaning of the applicable statute. It is appellant's view that extension of such light and power services to outside areas is ultra vires the city unless within the defined limits of the power granted in the statute.

The facts are that immediately adjoining the city on the southeast is an area which constitutes what is called the Eastchester Public Utility District. Immediately to the southeast of that is another similar district known as the Mountain View Public Utility District.[3] The Anchor Park area, previously mentioned, is within the Mountain View district.

Appellant argues that the Anchor Park residents may not be served by the city's light and power system because it is not a "contiguous and adjacent" district within the meaning of the quoted

statute. Says appellant: the word "districts" referred to means organized districts, such as public utility districts; it does not refer to a district in the sense of "area", and the word "contiguous" imports actual contact, something that adjoins. So, it is said, since Anchor Park is in the Mountain View district, and not in the Eastchester district which alone adjoins, or has contact with the city boundaries, the city system may not serve Anchor Park, for, "contiguous and adjacent districts" includes only those districts which are *both* contiguous and adjacent.

■ The trial court, while not taking issue with appellant's definition of the word "contiguous", concluded that the word "and" should be read "or", so that the permissible districts should be those which were contiguous *or* adjacent. It held that the city system might be extended to non-contiguous areas, within a reasonable distance of the city, as such would be "adjacent".[4] Accordingly, the court held that the city was entitled thus to extend its power and light service to the Anchor Park area, and entered judgment for the city, D.C., 106 F.Supp. 6, denying the injunction sought against it.[5]

districts outside the limits of the city, and for that purpose may construct, purchase or otherwise acquire, own, maintain and operate extensions, pole lines, mains, pipe lines and other necessary apparatus and equiqment therefor, together with the real property necessary for the same, outside the limits of the city. Provided, however, such public utilities as are provided for in this subsection shall not be operated or maintained by funds raised by taxation but from the revenue collected for service rendered by such plants or utilities from the customers or users thereof."

3. The creation of such districts is authorized by Alaska law; §§ 49–2–1 to 49–2–35, A.C.L.A.1949, which provide that they are entitled, § 49–2–21, to "construct, maintain and operate * * * dams, reservoirs, power houses, power structures, transmission lines, water works, telephone systems, [and] light plants".

4. The court attached a further condition however, to the effect that such non-contiguous area would not be "adjacent" if intervening settled areas were passed over, and not served; that the city could not "leapfrog" a settled area. It first found this had been done, but upon further hearing found that the city had not "leapfrogged" the Eastchester area, but served a substantial number of the inhabitants of the area intervening between the city and Anchor Park.

5. During the oral argument some question arose as to the finality of the judgment. By agreement of the parties the cause was tried upon the second cause of action set forth in the complaint which in other alleged causes of action sought relief on sundry grounds, including claims of excessive rates charged by the city, and allegations of construction of "spite lines", designed to damage plaintiff, and the use of oppressive threats of arbitrary official ac-

In the view of the appellant the trial court's reading of the word "and" as "or" does violence to the plain language of the statute. How, it says, can such meaning have been intended when, in the same sentence the expression "and/or" is used?

 But without considering whether this be one of those cases in which the word "and" may be read as "or", we think that the phrase here in dispute— "contiguous and adjacent districts" refers to contiguous districts *and* adjacent districts. We think this is its plain meaning. This involves no conversion of the word "and" to "or". It is apparent to us that appellant seeks to read the phrase as if it referred to districts which are *both* contiguous and adjacent.

Again, we find no reason for construing the word "districts", here used, to refer to public utility districts. As well could it be argued that it refers to school districts. That would make no sense. In fact, the section here involved, although enacted at the same legislative session which first authorized public utility districts, was actually enacted and approved before the latter.[6] We think the court correctly considered that the word "districts" meant "areas" or "localities". The record shows that the entire area lying to the south of the city, embracing both the Eastchester and the Anchor Park portions, constituted a district wherein many new buildings were being erected in the manner in which rapidly growing municipal areas are wont to expand beyond the city limits. It could well be argued that this whole district was both contiguous and adjacent. For the reasons previously stated, we find it unnecessary to go so far. We hold that the only permissible view of the statute is that it permits the city's extension of its light and power facilities to the Anchor Park area.

We note one further contention. The court refused to permit appellant to prove that the city had no excess power when it extended its transmission lines into outside communities. Appellant contends that the city was without power to make such extensions in the absence of an available supply of power in excess of the needs of all consumers within the city. We find no such limitation in the act which authorizes such outside services, and none can be implied.

The judgment is affirmed.

---

tion in order to procure customers for its power system. In entering judgment on the one cause of action the court made the express determination that "there is no just reason for delay" and the direction for entry of judgment required by Rule 54(b), Fed.Rules Civ. Proc. 28 U.S.C.A. See Burkhart v. United States, 9 Cir., 210 F.2d 602. As in the Burkhart case, the judgment here would meet the tests of finality under the former practice as stated in Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478.

6. Public utility districts were authorized by Chap. 71, Session Laws of 1935, p. 143, approved March 14, 1935. § 16-1-35, supra, permitting the extension of cities' facilities outside their boundaries, was amended to read as it now does by Chap. 48 of the same Session Laws approved March 12, 1935.