224 F.2d 198
 Norvin RIESER, Milton S. Koblitz, George S. Champlin, E. M. Dart Mfg. Co., Lillian Boehm, Bernard Fein, Kathryn P. Braithwaite and Edward F. Quirke, Plaintiffs-Appellants, and
Emanuel Josephson, Rubin Slavsky, Raymond Wiley and William W. Lange, Intervening Plaintiffs-Appellants,
v.
The BALTIMORE and OHIO RAILROAD COMPANY, Defendant-Appellee.
 Docket 23560.
 United States Court of Appeals Second Circuit.
 Argued April 18, 1955.
 Decided June 9, 1955.
 
 Louis Boehm and Nathan B. Kogan, New York City (Spencer Pinkham, New York City, of counsel), for plaintiffs-appellants and intervening plaintiffs-appellants.
 Abraham K. Weber, New York City, for plaintiffs-appellants Kathryn P. Braithwaite and Edward F. Quirke.
 Cravath, Swaine & Moore, New York City (Ralph L. McAfee, Edward C. Perkins, and Jerome T. Orans, New York City, of counsel), for defendant-appellee.
 Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.
 CLARK, Chief Judge.
 
 
 1
 Plaintiffs are bondholders of the Alton Railroad Company, which has recently gone through reorganization pursuant to § 77 of the Bankruptcy Act, 11 U.S.C. § 205. In that reorganization plaintiffs received only 37.5 per cent of the face amount of their claims, and their old bond certificates were cancelled "except for purpose of evidencing right of the bearer or registered owner to a claim, if any, against the Baltimore and Ohio Railroad Company." It is this claim which the plaintiffs are now attempting to enforce as unsatisfied creditors. The defendant dominated the debtor corporation through ownership and control of all of its voting stock from 1931 until 1942 and is alleged to have used its position to divert potential profits from the debtor to itself. The defense of the statute of limitations was successfully interposed in the district court, Judge Murphy ruling that all claims accruing before May 7, 1942, were barred by the applicable New York statutes. D.C.S.D.N.Y., 123 F.Supp. 44. On the appeal on the merits plaintiffs intend to contest the appropriateness of this cutoff date which bars the greatest part of their claims. At this juncture, however, we are concerned only with a motion by the defendant to dismiss the appeal for lack of an appealable order below, despite an express determination that there was no just reason for delay and direction for entry of judgment pursuant to F.R. 54(b).
 
 
 2
 Defendant argues vigorously that in no event can there be an appealable judgment here, because there has been adjudicated only a part of a unitary action by bondholders to recover deficiencies on their bonds. Even under F.R. 54 (b), as is now settled, an entire claim must be adjudicated and appeals cannot be taken from an order upon a part of a single claim. See Leonidakis v. International Telecoin Corp., 2 Cir., 208 F.2d 934; Gold Seal Co. v. Weeks, 93 U.S.App. D.C. 249, 209 F.2d 802; Pabellon v. Grace Line, Inc., 2 Cir., 191 F.2d 169, 174, certiorari denied Coston Supply Co. v. Pabellon, 342 U.S. 893, 72 S.Ct. 201, 96 L. Ed. 669; United States Plywood Corp. v. Hudson Lumber Co., 2 Cir., 210 F.2d 462. So an action to enforce a series of overdue interest payments on matured bonds would not state multiple claims merely because more than one payment is owed. The ultimate determination of multiplicity of claims must rest in every case on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced. See United Artists Corp. v. Masterpiece Productions, 2 Cir., 221 F.2d 213. Here the plaintiffs alleged a series of independent acts of wrongdoing by the defendant, some of which occurred in their entirety before the cutoff date fixed by the district court. These include the alleged misuse of Alton's rolling stock, the wrongful abrogation of contracts favorable to Alton, and the misappropriation of Alton's tax credits for the benefit of the defendant. Far from being merely an action by a bond-obligee on his bond, it is actually that of a corporation's judgment creditors who are suing in the right of the corporation to seek redress for a series of torts alleged to have been committed by the defendant against their debtor. This seems to us clearly a case of multiple claims, where Judge Murphy could enter final judgment upon making the appropriate determination.
 
 
 3
 Defendant also points out that Judge Murphy appears to have expressed a possible doubt as to the validity of the rule and that this issue is now before the Supreme Court by grant of certiorari in the case of Mackey v. Sears, Roebuck & Co., 7 Cir., 218 F.2d 295, which sustained the rule. See Sears, Roebuck & Co. v. Mackey, 348 U.S. 970, 75 S.Ct. 535. Although we have recently reiterated belief in the rule's validity, see, e. g., United Artists Corp. v. Masterpiece Productions, supra, 2 Cir., 221 F.2d 213, and Rao v. Port of New York Authority, 2 Cir., 222 F.2d 362, it seems desirable to make some re-examination of the question here. The substantial importance of the problem, the far-reaching consequences of an adverse holding, the lack of official defenders of the rule — unlike an Act of Congress, which is supported by the Attorney General under 28 U.S.C. § 2403 — and the normal interest of counsel in their own case, rather than in the rules as such, all suggest the desirability of adducing here such reasons in favor of validity as have seemed persuasive upon a careful study of the matter.
 
 
 4
 The argument against validity is simple — indeed quite delusively so. Starting with the principle that mere procedural rules cannot expand a court's jurisdiction, it is then assumed that the assailed judgment was not appealable before the advent of the rules; and the inevitable conclusion then seems to be that the judgment cannot now be made appealable by rule, and particularly by action of the trial judge. But this statement conceals the extent of the assumption made as to the former law and negates the change in law necessarily made (with express authority of Congress) by the advent of the federal rules as a new system of procedure in our courts. For our problem arises because of the merger of law and equity, supplemented by the correlative rules achieving an extremely broad content for the civil action. Hence how can it be patly assumed that an assailed judgment was not appealable before the rules when the then practice did not contemplate such a judgment combining law and equity and other remedies?
 
 
 5
 The general aspects of these broader questions were indeed contemplated by David Dudley Field and his associates in planning the original law-equity merger in New York in 1848. In the First Report of the Commissioners on Practice and Pleadings 74, 76, 77 (N.Y.1848), the Commissioners recognized three principal difficulties in achieving a uniform procedure in cases theretofore cognizable at law and equity; and of these they stated the form of the judgment and the means of enforcing it as first. (The others were the mode of pleading and the mode of trial.) As they pointed out, chancery granted specific relief to such of the parties as were so entitled, while the law actions gave substitutionary relief by way of money damages, which, in the case of setoffs, would remain only a balance due after deduction of the setoffs. And so the plasticity of the practice in equity might permit of a "split" judgment or decree awarding varied relief to differing parties. And here, as elsewhere, the Commissioners intended to make the more plastic processes of equity available for the new and combined action. See in general Kharas, A Century of Law-Equity Merger in New York, 1 Syracuse L. Rev. 186, 187-189 (1949); Millar, Civil Procedure of the Trial Court in Historical Perspective 356-361 (1952). And this, too, is just what was planned and done in the original F.R. 54(b), which was soon sustained not only by us, Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83, but by the Supreme Court in Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478.
 
 
 6
 Before we turn to what seems to us the decisive significance of Reeves v. Beardall, it is desirable to note somewhat further the background of the rule. For the problem of the effect of district court rules upon appellate procedure early concerned the Advisory Committee, which gave the most careful attention to it. While the Committee did not plan a revision of appellate procedure as such, yet so much of it depended on district court activity that various incidental appellate practices were necessarily affected. So after intensive study the Committee decided that the Supreme Court under general and historic powers, as well as the specific enabling act, here had the authority to act, although it made the problem clear to the Court in its final Report; and the Court's adoption of the rule after such careful appraisal has been widely considered as approval of the Committee's conclusion as to its validity. This background is set forth, with citations, in Lopinsky v. Hertz Drive-Ur-Self Systems, 2 Cir., 194 F.2d 422, 425-427. The rule here under consideration has independent significance as an expression of finality of court action and only affects appealability and the appellate court's jurisdiction through the operation of a statute based on finality and subject to change as Congress wishes; indeed that body has before it now a proposal of the Judicial Conference which would adapt the plan of the present F.R. 54(b) quite broadly to all federal appeals. See Rep. of the Jud.Conf. of the U.S. 27 (Sept. 1953); Baltimore Contractors v. Bodinger, 348 U.S. 176, 181 note 8, 75 S.Ct. 249, 252.
 
 
 7
 As a matter of fact, others of the rules — which have been uniformly sustained — affect appellate jurisdiction even more directly than does this, e. g., the rule materially shortening the time for appeal and the extensive provisions suspending the time upon the filing of any one of several listed motions. See cases cited in Lopinsky v. Hertz-Drive-Ur-Self Systems, supra, 2 Cir., 194 F.2d 422, 428, notes 13, 14, and 15. A close analogy in both rationale and result is that most cited of all the rules, never questioned so far as appears and now extended by judicial decision to admiralty, F.R. 52(a), providing that findings of fact shall not be set aside unless "clearly erroneous." See McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6. For this was a definite adoption of the equity rule of review and rejection of the law review; the adoption of a single form of review was considered essential to the easy operation of the union of law and equity. See Advisory Committee's Note to F.R. 52(a). A view that the rule-making authority lacked power to make the review uniform between law and equity would have seriously impeded or prevented the merger of law and equity authorized in the rule-making statute (the former 28 U.S.C. § 723c, 48 Stat. 1064), as the experience in some states has indicated. Clark & Stone, Review of Findings of Fact, 4 U. of Chi.L.Rev. 190 (1937); Clark, Code Pleading 111, 112 (2d Ed.1947). And, as the federal cases show, the adoption of this uniform rule has greatly assisted in making the federal merger so unobtrusively operable.
 
 
 8
 When, therefore, the split judgment of equity was incorporated into original F. R. 54(b), it was necessary to fit this rule into the framework of finality required by the statute, 28 U.S.C. § 1291. For this the earlier cases — not altogether clear at best[1] — cannot afford an automatic and infallible guide. The situation is one fairly to be developed by analogy — an important and a fertilizing part of the judicial process. What was done — and properly so — is rather well described by a critic (in part) of this rule, Judge Hastie, who, concurring in the result in Bendix Aviation Corp. v. Glass, 3 Cir., 195 F.2d 267, 280, 38 A.L.R.2d 356, describes the holding in Reeves v. Beardall, thus: "Rather, in a situation which it had not considered before, the Supreme Court applied a conception of an appealable unit of litigation which was consistent both with the rationale of its earlier decisions construing Section 1291 and with the Rules newly enacted in connection with the liberalization of joinder." A similar thought is expressed by Mr. Justice Jackson in Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 512, 70 S.Ct. 322, 324, 94 L.Ed. 299, thus: "The liberalization of our practice to allow more issues and parties to be joined in one action and to expand the privilege of intervention by those not originally parties has increased the danger of hardship and denial of justice through delay if each issue must await the determination of all issues as to all parties before a final judgment can be had. In recognition of this difficulty, present Rule 54(b), Federal Rules of Civil Procedure, 28 U.S. C.A., was promulgated." He goes on to discuss sympathetically the obvious purpose of this amended form of the rule to reduce as far as possible the uncertainty and hazard to the litigant, but, since the amendment was not in force to control the case under consideration, held it not appropriate to attempt to determine its effect on cases of this kind "beyond observing that it may do much to prevent them from coming here."[2] Hence it seems not without significance that in its latest citation of the rule the Supreme Court notes, but accepts without question, an appeal from a F.R. 54(b) judgment. National City Bank of New York v. Republic of China, 348 U.S. 356, 357, 75 S.Ct. 423.[3]
 
 
 9
 If, therefore, this judgment would have been appealable under original F.R. 54 (b) and Reeves v. Beardall — as to us seems clear — it is now appealable here. For the present rule is simply a device whereby the intent of the district judge to exercise his power either to adjudicate or to postpone adjudication (the latter power he always has had) is made clearly manifest. "It provides an opportunity for litigants to obtain from the District Court a clear statement of what that court is intending with reference to finality, and if such a direction is denied, the litigant can at least protect himself accordingly." Mr. Justice Jackson in Dickinson v. Petroleum Conversion Corp., supra, 338 U.S. 507, 512, 70 S.Ct. 322, 324; see, also, General Time Corp. v. Padua Alarm Systems, 2 Cir., 199 F.2d 351, 358, 364, certiorari denied Padua Alarm Systems v. General Time Corp., 345 U.S. 917, 73 S.Ct. 728, 97 L.Ed. 1351; Republic of Italy v. De Angelis, 2 Cir., 206 F.2d 121, 132.
 
 
 10
 That the rule is fulfilling a substantial and a desirable part in federal litigation seems demonstrated by the cases. For it is operating affirmatively and negatively in a great number of cases, as the reports show; and we are cognizant of the fact, as appears from daily inspection of records on appeal, that there are substantially more cases than are expressly noted or discussed by the courts.[4] Indeed, it seems the exception for parties to raise the issue; and many of the cases where discussion occurs are those where the court, and not the parties, has raised the question.[5] And the general view of the courts and the writers is strongly in favor of the validity of the rule. In addition to the cases cited from this Circuit[6] and the trend toward approval in the Supreme Court cases cited above, there are extensively reasoned decisions to the same effect from four other circuits: Bendix Aviation Corp. v. Glass, supra, 3 Cir., 195 F.2d 267, 38 A.L.R.2d 356; Boston Medical Supply Co. v. Lea & Febiger, 1 Cir., 195 F.2d 853; Town of Clarksville, Va. v. United States, 4 Cir., 198 F.2d 238, certiorari denied United States v. Town of Clarksville, Va., 344 U.S. 927, 73 S.Ct. 495, 97 L.Ed. 714; Mackey v. Sears, Roebuck & Co., supra, 7 Cir., 218 F.2d 295. To this must be added the approval of writers, e. g., 6 Moore's Federal Practice ¶ 54.29 (2d Ed. 1953) and Note, 62 Yale L.J. 263 (1953), as well as the direct implication of validity from a large number of other decisions which do not go into a lengthy discussion of the matter.[7]
 
 
 11
 Of course there have been some disputes as to the interpretation of the rule, thus by implication accepting its validity. One of these concerns the question whether demands against a number of tort-feasors jointly and severally liable are multiple claims or only a single claim within the rule. See United Artists Corp. v. Masterpiece Productions, supra, 2 Cir., 221 F.2d 213, and Rao v. Port of New York Authority, supra, 2 Cir., 222 F.2d 362, holding the former, with Steiner v. 20th Century-Fox Film Corp., 9 Cir., 220 F.2d 105, contra. And there are certain dicta in other cases, such as Gold Seal Co. v. Weeks, supra, 93 U.S.App.D.C. 249, 209 F.2d 802, appearing to express some doubts not at all conclusive.[8] But Flegenheimer v. General Mills, 2 Cir., 191 F.2d 237, remains the sole case expressing all-out doubts as to the rule's validity when construed in accordance with its intent; that decision was an attempt to circumscribe modern judgments within the old molds without consideration of the new situation created by the adoption of the rules and, in the light of the later cases, cannot be taken as the present law of this Circuit.[9]
 
 
 12
 Here we may note the carefully reasoned concurring opinion of Judge Hastie for himself and Judge Kalodner in Bendix Aviation Corp. v. Glass, supra, 3 Cir., 195 F.2d 267. There the majority of the Third Circuit, sitting en banc, sustained the validity of F.R. 54(b) and applied it to hold appealable the dismissal of a complaint where a compulsory counterclaim was left standing. Resting his concurrence upon the refusal of injunctive relief, Judge Hastie objected to the validity of the rule as applied by the majority. Analysis shows, however, that his conclusion is more limited than some commentators have assumed. For (as we have seen) he recognizes that the new situation created by the rules requires application of the older cases only by choice and analogy, not as precise measuring rods, and stresses, just as do our cases, that what is requisite is a final adjudication of at least a certain "quantum of litigation." This he did not find in the case then before his court, a conclusion obviously with a reasonable basis, even though we think history and modern convenience point the other way to the majority's result.[10] This analysis suggests that he would accept — as apparently he does[11] — the rule's operation in all the more usual cases, such as this one or the Mackey case before the Supreme Court, where there has been definitive adjudication of a certain quantum of litigation, with no compulsory offsets left standing.[12]
 
 
 13
 This brings us to the final point we may note, namely, the destructive consequences to the entire rules structure of an all-out declaration of invalidity of this rule. Judge Hastie denies such destructive force to his view; though he does not document the point, we can read it only as a final confirmation of our narrow reading of his objection to the rules. For there can be little question as to the devasting consequences of a declaration of general invalidity; it would suggest the gravest doubt as to those several rules which directly control the time, the form, and the detail of appeal; and it would tend to limit and deform various other rules having some district court application, but perhaps even greater utility on appeal.[13] It is probably not possible now to forecast the extent of the confusion and doubt which must ensue; but a mere analysis of the nature of such rules as compared to this will be persuasive of the shambles which we then must expect. But in our judgment history, reason, and convenience — all support the rule and the general concurrence of professional view in its favor.
 
 
 14
 The motion to dismiss the appeal is therefore denied.
 
 
 
 Notes:
 
 
 [1]
 See the difficulties in ascertaining the precise limits of the earlier rules discovered in Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83, or Flegenheimer v. General Mills, 2 Cir., 191 F.2d 237, or Crick, The Final Judgment As a Basis for Appeal, 41 Yale L.J. 539, 557-563 (1932)
 
 
 [2]
 Note Mr. Justice Black's reference to "the Court's hope that the new Rule 54 (b) has charted a clear route through the jungle." Dissenting in Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 517, 70 S.Ct. 322, 327, 94 L.Ed. 299. See also Baltimore Contractors v. Bodinger, 348 U.S. 176, 180 note 6, 181 note 8, 75 S.Ct. 249, 252
 
 
 [3]
 The fact of the F.R. 54(b) order is not noted in the opinion of the Court of Appeals. Republic of China v. National City Bank of New York, 2 Cir., 208 F. 2d 627
 
 
 [4]
 Compare note 3 supra
 
 
 [5]
 Cases such as Flegenheimer v. General Mills, 2 Cir., 191 F.2d 237; General Time Corp. v. Padua Alarm Systems, 2 Cir., 199 F.2d 351, certiorari denied Padua Alarm Systems v. General Time Corp., 345 U.S. 917, 73 S.Ct. 728, 97 L. Ed. 1351; and United Artists Corp. v. Masterpiece Productions, 2 Cir., 221 F. 2d 213
 
 
 [6]
 United Artists Corp. v. Masterpiece Productions, 2 Cir., 221 F.2d 213, Rao v. Port of New York Authority, 2 Cir., 222 F.2d 362, and Filt-O-Pure Products Corp. v. Chemex Corp., 2 Cir., 222 F.2d 424, are the most recent cases; see, also, Lopinsky v. Hertz Drive-Ur-Self Systems, 2 Cir., 194 F.2d 422; Telechron, Inc., v. Parissi, 2 Cir., 197 F.2d 757, 759; Pabellon v. Grace Line, Inc., 2 Cir., 191 F.2d 169, certiorari denied Coston Supply Co. v. Pabellon, 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669; and other cases cited in note 7 infra. The case of Flegenheimer v. General Mills, 2 Cir., 191 F.2d 237, which is contra, is cited infra in the text
 
 
 [7]
 Cases accepting review upon the district court's determination include: National City Bank of New York v. Republic of China, 348 U.S. 356, 75 S.Ct. 423; Vale v. Bonnett, 89 U.S.App.D.C. 116, 191 F. 2d 334; Williams v. Protestant Episcopal Theological Seminary in Virginia, 91 U.S.App.D.C. 69, 198 F.2d 595, certiorari denied 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670; Francis v. Crafts, 1 Cir., 203 F.2d 809, certiorari denied 346 U. S. 835, 74 S.Ct. 43, 98 L.Ed. 357; Francis v. Lyman, 1 Cir., 216 F.2d 583; American Machine & Metals, Inc., v. De Bothezat Impeller Co., 2 Cir., 180 F. 2d 342; Eversharp, Inc., v. Pal Blade Co., 2 Cir., 182 F.2d 779; Producers Releasing Corp. De Cuba v. Pathe Industries, 2 Cir., 184 F.2d 1021; Markert v. Swift & Co., 2 Cir., 187 F.2d 104; Republic of China v. American Express Co., 2 Cir., 195 F.2d 230; Fanchon & Marco, Inc., v. Paramount Pictures, 2 Cir., 202 F.2d 731, 36 A.L.R.2d 1336; Colonial Airlines v. Janas, 2 Cir., 202 F.2d 914; Cohen v. La Vin, 2 Cir., 210 F.2d 550; Etten v. Lovell Mfg. Co., 3 Cir., 184 F.2d 737, certiorari denied 340 U.S. 931, 71 S.Ct. 492, 95 L.Ed. 672; Continental Assur. Co. v. Conroy, 3 Cir., 209 F.2d 539; Brown v. American-Hawaiian S.S. Co., 3 Cir., 211 F.2d 16; Oyster Shell Products Corp. v. United States, 5 Cir., 197 F.2d 1022, certiorari denied 344 U.S. 885, 73 S.Ct. 184, 97 L.Ed. 685; Kinnear-Weed Corp. v. Humble Oil & Refining Co., 5 Cir., 214 F.2d 891, certiorari denied 348 U.S. 912, 75 S.Ct. 292; Buchanan v. Sinclair Oil & Gas Co., 5 Cir., 218 F.2d 436; Mid-States Products Co. v. Commodity Credit Corp., 7 Cir., 196 F.2d 416; Blair v. Cleveland Twist Drill Co., 7 Cir., 197 F.2d 842; Waialua Agricultural Co. v. Maneja, 9 Cir., 178 F.2d 603, certiorari denied 339 U.S. 920, 70 S.Ct. 622, 94 L.Ed. 1344; Prickett v. Consolidated Liquidating Corp., 9 Cir., 180 F.2d 8; Id., 9 Cir., 196 F.2d 67. The case of Phelan v. Middle States Oil Corp., 2 Cir., 203 F.2d 836, is also to be added to this group, since there the court, notwithstanding some criticism of the piecemeal approach, merely adjourned the hearing and continued the appeal on its docket, thereby accepting appealability under F.R. 54(b), as the headnote points out
 Cases declining review for lack of such determination include: David v. District of Columbia, 88 U.S.App.D.C. 92, 187 F.2d 204; Felder v. D. Loughran Co., 88 U.S.App.D.C. 139, 188 F.2d 623; Roberts v. American Newspaper Guild, 88 U.S.App.D.C. 231, 188 F.2d 650; Maizel v. Epstein, 90 U.S.App.D.C. 328, 196 F.2d 44; Youpe v. Moses, D.C.Cir., 213 F.2d 613; Garbose v. George A. Giles Co., 1 Cir., 183 F.2d 513; Phillips v. S. E. C., 2 Cir., 171 F.2d 180; Flegenheimer v. Manitoba Sugar Co., 2 Cir., 182 F.2d 742; Tobin Packing Co. v. North American Car Corp., 2 Cir., 188 F.2d 158; Lyman v. Remington Rand, 2 Cir., 188 F.2d 306; Republic of China v. American Express Co., 2 Cir., 190 F.2d 334; Etten v. Kauffman, 3 Cir., 179 F. 2d 302; Robinson Bros. & Co. v. Tygart Steel Products Co., 3 Cir., 184 F.2d 534; McDonald v. Pennsylvania R. Co., 3 Cir., 210 F.2d 524; Katzman v. Hoffman, 3 Cir., 211 F.2d 701; Shipley Corp. v. Leonard Marcus Co., 3 Cir., 214 F.2d 493; District 65, Distributive, Processing and Office Workers Union of New York and New Jersey v. McKague, 3 Cir., 216 F.2d 153; Newburgh Moire Co. v. Superior Moire Co., 3 Cir., 218 F.2d 580; Farmer v. Powers, 5 Cir., 204 F.2d 509; Kuly v. White Motor Co., 6 Cir., 174 F.2d 742; International Union of Electrical, Radio & Machine Workers, C. I. O. v. United Electrical, Radio & Machine Workers of America, 6 Cir., 192 F. 2d 847; Winsor v. Daumit, 7 Cir., 179 F.2d 475; Texas Eastern Transmission Corp. v. McDonald, 7 Cir., 198 F.2d 929; Lockwood v. Hercules Powder Co., 8 Cir., 172 F.2d 775; Brandt v. Renfield Importers, 8 Cir., 216 F.2d 206; Kam Koon Wan v. E. E. Black, Ltd., 9 Cir., 182 F.2d 146; Russell v. Texas Co., 9 Cir., 211 F.2d 740; Wynn v. R. F. C., 9 Cir., 212 F.2d 953. The cases of Kaufman & Ruderman, Inc., v. Cohn & Rosenberger, 2 Cir., 177 F.2d 849, and Dyer v. MacDougall, 2 Cir., 201 F.2d 265, illustrate both facets of the problem.
 
 
 [8]
 Gold Seal Co. v. Weeks, 93 U.S.App. D.C. 249, 209 F.2d 802, presents only the usual issue of cases such as Leonidakis v. International Telecoin Corp., 2 Cir., 208 F.2d 934, that part only of a single claim cannot be adjudicated with finality and the only question arises because the court cites Flegenheimer v. General Mills, 2 Cir., 191 F.2d 237, favorably on this proposition, and Bendix Aviation Corp. v. Glass, 3 Cir., 195 F.2d 267, critically. The citations hardly seem apt on this issue, though compare the analysis of the Bendix case infra in the text. Cases such as Burkhart v. United States, 9 Cir., 210 F.2d 602, and Chugach Electric Ass'n v. City of Anchorage, 9 Cir., 214 F.2d 110, do no more than state the issue. Both of these circuits have recognized the validity of the rule in other cases, see note 7 supra
 
 
 [9]
 See note 6 supra; for a detailed criticism of Flegenheimer v. General Mills, 2 Cir., 191 F.2d 237, see Lopinsky v. Hertz Drive-Ur-Self Systems, 2 Cir., 194 F.2d 422, 429-430
 
 
 [10]
 The compulsory counterclaim is only a creation of the rules, F.R. 13(b) (coming from the previous Equity Rules); by usual American practice the filing of any counterclaim is optional with the claimant. Seager v. Foster, 185 Iowa 32, 169 N.W. 681, 8 A.L.R. 690, with note 694-745; Wright, Estoppel by Rule: The Compulsory Counterclaim under Modern Pleading, 38 Minn.L.Rev. 423, 39 Iowa L.Rev. 255 (1954); Millar, Civil Procedure of the Trial Court in Historical Perspective 138-139 (1952). Hence separation is clearly within the rule-making authority and is shown to be intended to the extent here involved by the explicit references in F.R. 54(b) not only to "claim" and "counterclaim," but also to "cross-claim, or third-party claim."
 
 
 [11]
 See, e. g., Shipley Corp. v. Leonard Marcus Co., 3 Cir., 214 F.2d 493, and Filt-O-Pure Products Corp. v. Chemex Corp., 2 Cir., 222 F.2d 424
 
 
 [12]
 So we, too, have ruled that separation is not permissible where the counterclaim in name is actually only defensive. United States Plywood Corp. v. Hudson Lumber Co., 2 Cir., 210 F.2d 462
 
 
 [13]
 Of the first group, thus becoming presumptively invalid, are Rules 46, 51, 52, 53(e), 61, 73, 74, 75, 76, and 81(a) (2), (3) and the former (7), including rules abolishing exceptions to rulings on evidence, but requiring exceptions to the charge, concerning the effect of findings or of a report of a master, harmless error, the method and time of taking an appeal, and all details as to making up the record, including the abolition of summons and severance, and the application of the appeal rules to various special procedures. Of the second group which will be affected and made misshapen there would be included rules such as 41, 49, 50, 55, 56, 58, 59, 60, 68, 70, and 71A dealing with a variety of subjects, including verdicts, special and otherwise, summary and other judgments, and so on. While this group of rules does not so directly purport to regulate appellate procedure, yet they shape and determine the meaning of district court adjudication and thus affect appellate court intake. The problem is discussed in Lopinsky v. Hertz Drive-Ur-Self Systems, 2 Cir., 194 F.2d 422, 428
 
 
 
 15
 FRANK, Circuit Judge (concurring in the result).
 
 
 16
 1. I reluctantly concur in the result. I do so solely because I feel constrained by decisions in very recent cases in this circuit.[1] Had I been sitting in those cases, I would have dissented.
 
 
 17
 For those decisions overruled the carefully thought-out decision in Flegenheimer v. General Mills, 2 Cir., 191 F.2d 237, where the opinion was by our wisest and most experienced living judge, Learned Hand. I still think correct the views there expressed. I shall not bother to repeat them, or what I said at some length in a concurring opinion in Pabellon v. Grace Line, 2 Cir., 191 F.2d 169, at page 176ff.
 
 
 18
 I fail to comprehend how Phelan v. Middle States Oil Corporation, 2 Cir., 203 F.2d 836 — per Judge Swan, in which Judge Hand and I concurred — even slightly intimates any modification of Flegenheimer, for in Phelan, although the parties had not raised the issue of appealability, we held that certain issues had not been finally determined and hence were not appealable, despite the fact that the district judge had certified them pursuant to Rule 54(b); there we said that we would either (a) adjourn the appeal until the district court entered final orders as to such matters or (b) entertain the appeal if the parties chose to file a stipulation eliminating those issues from the litigation.[2] Nor do I understand why Judge Clark regards Telechron, Inc., v. Parissi, 2 Cir., 197 F.2d 757, as pertinent: there we held, per Judge Swan, the order appealable under 28 U.S.C. § 1292, on the ground that the order refused to grant an injunction.
 
 
 19
 Of course, for reasons stated in Republic of China v. American Express Co., 2 Cir., 190 F.2d 334, 338-339, everyone agrees that Rule 54(b) does validly have this negative result: Even if an order dismissing one of several distinct claims would have been appealable before the Rule, it is no longer so, unless the trial judge issues a certificate pursuant to the Rule. See 6 Moore, Federal Practice (2d ed.) 216-218.
 
 
 20
 I regard Judge Hastie's opinion in Bendix Aviation Corp. v. Glass, 3 Cir., 195 F.2d 267, at page 277 ff. as a further argument in support of Judge Hand's views. I think Judge Clark has not successfully distinguished Judge Hastie's argument. Nor do I think that Judge Hastie's concurrence in Filt-O-Pure Products Corp. v. Chemex Corp., 2 Cir., 222 F.2d 424, has any significance here, since the order there in question was appealable under Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83, and Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478. Judge Hastie's opinion in Shipley Corp. v. Leonard Marcus Co., 3 Cir., 214 F.2d 493, is, I think, in accord with Republic of China v. American Express Co., 2 Cir., 190 F. 2d 334 and thus not in conflict with Judge Hand's opinion in Flegenheimer v. General Mills, 2 Cir., 191 F.2d 237.
 
 
 21
 For reasons stated by Judge Hastie in Bendix Aviation Corp. v. Glass, 3 Cir., 195 F.2d 267, 277 ff., I believe Judge Clark is seeing ghosts when he asserts that, should the Supreme Court agree with Judge Hand when it comes to decide Sears Roebuck & Co. v. Mackey, 348 U.S. 970, 75 S.Ct. 535,[3] many of the Rules would perish. Previous similar expressions of apprehension by Judge Clark[4] about the death of most of the Rules, as a result of decisions which he deemed unfortunate, have proved unfounded.
 
 
 22
 As shown by Professor Moore, Rule 54 (b), even if valid when broadly interpreted as he and Judge Clark interpret it, meets but in small measure the far more extensive and serious problem resulting from the non-appealability of most interlocutory orders, a problem to which Mr. Justice Black directed attention in Dickinson v. Petroleum Corporation, 338 U.S. 507, 516, 70 S.Ct. 322, 94 L.Ed. 299. At most, the Rule can be no more than a tiny island in a large sea of troubles for litigants. See 6 Moore, Federal Practice (2d ed.) 286-292. Nor can any Rule solve that problem, since the statute, 28 U.S.C. § 2072, authorizing the Supreme Court to promulgate procedural rules, gives that Court no authority to affect the jurisdiction of any of the federal courts. See, e. g., Sibbach v. Wilson & Co., 312 U.S. 1, 655, 61 S.Ct. 422, 85 L. Ed. 479; United States v. Sherwood, 312 U.S. 584, 589-590, 61 S.Ct. 767, 85 L.Ed. 1058; Hudson v. Parker, 156 U.S. 277, 284, 15 S.Ct. 450, 39 L.Ed. 424.
 
 
 23
 To meet that grave problem, we need, at the very least, a statute of the kind recommended in September, 1953, by the Judicial Conference.[5] It would provide:
 
 
 24
 "Section 1292 of Title 28 of the United States Code is hereby amended by insertion of the letter (a) at the beginning of the section and adding at the end thereof an additional sub-paragraph lettered (b) to read as follows:
 
 
 25
 "(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order; provided, however, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." (Emphasis added.) See discussion in 6 Moore, Federal Practice (2d ed.) 290-292, and in the concurring opinion in Pabellon v. Grace Line, 2 Cir., 191 F.2d 169, at page 179 ff.[6]
 
 
 26
 E. I. Dupont de Nemours Co. v. Hall, 4 Cir., 220 F.2d 514, illuminates the inefficacy of Rule 54(b) or any other conceivable Rule, absent such a statute. There defendant appealed from an interlocutory order denying defendant's motion to dismiss the action on the ground that plaintiff's sole remedy was under the State's Workmen's Compensation Act. The Fourth Circuit said: "It was admitted that a reversal of the holding of the trial judge on this question would result in the termination of the litigation between the parties; and the case is one which illustrates the wisdom of the recent proposal approved by the Judicial Conference of the United States that the statute relating to interlocutory appeals be amended. The amendment of the statute, however, is a matter for Congress, not for the courts; and under the law as it now stands we have no option but to dismiss the appeal, since we are given jurisdiction of appeals from final judgments only, except in the special cases enumerated in 28 U.S.C. § 1292." Another striking instance of this kind is Austrian v. Williams, 2 Cir., 198 F.2d 697. There the defendant had pleaded the state statute of limitations. The trial judge, after holding that statute inapplicable, proceeded to hold a lengthy trial after which, in a careful opinion, he entered final judgment for the plaintiff, D.C., 103 F.Supp. 64. We reversed on the sole ground that the state statute did apply and barred recovery. The time and large expenses of the parties, and the time and energy of the trial judge, went for naught. Had the interlocutory order as to the statute of limitations been appealable (on a certificate by the trial judge and at the discretion of the appellate court), this useless waste could have been avoided.
 
 
 27
 Since, then, Rule 54(b), even if it were valid when most generously construed, would achieve little, and since the solution of the larger, more inclusive, problem requires new legislation, it follows that, if the views, opposed to Judge Hand's, concerning that Rule, should be rejected by the Supreme Court, no great harm would result. Indeed, it might well be that such a rejection would serve as a stimulus to Congressional enactment of the statute which the Judicial Conference recommends.
 
 
 
 Notes:
 
 
 [1]
 United Artists Corporation v. Masterpiece Productions, 2 Cir., 221 F.2d 213; Rao v. Port of New York Authority, 2 Cir., 222 F.2d 362
 
 
 [2]
 For subsequent developments, by which those issues were eliminated, see 2 Cir., 210 F.2d 360; 2 Cir., 220 F.2d 593, 594
 
 
 [3]
 There the Court granted certiorari to review Mackey v. Sears Roebuck & Co., 7 Cir., 218 F.2d 295
 
 
 [4]
 See, e. g., Clark, The Tompkins Case and The Federal Rules, 24 J. of Am.Jud. Society (1941) 158, 161; Clark, Procedural Aspects of the New State Independence, 8 Geo.Wash.L.Rev. (1940) 1230, 1231-1232; Clark, Book Review, 36 Cornell L.Q. (1950) 181, 183-184; Clark, State Law in the Federal Courts, in the volume Jurisprudence in Action (1953) 59 at 107-109
 
 
 [5]
 See Report of the Proceeding of the Regular Annual Meeting of the Judicial Conference of the United States, September 24-25, 1953, Washington, D.C. at p. 27
 
 
 [6]
 For reasons stated by Professor Moore, he, Judge Hand and I would prefer a less restricted new statute. In particular, we would prefer not to require any action by the district judge as a basis for the exercise of the discretion by the Court of Appeals, and we would prefer to have the statute confer such discretion on each Court of Appeals in all cases of interlocutory orders (e. g., interlocutory orders granting or denying injunctions and interlocutory orders in bankruptcy). Nevertheless, we think the proposed statute would be an important step forward